Eric F. Rosenberg, Esq.
**ROSENBERG, FAYNE & RADEN**
5400 Kenilworth Avenue
Riverdale, Maryland 20737
Telephone:     (301) 864-2900
ERosenberg@Rosenberg-Fayne.com

David C. Silver, Esq. (*pro hac vice forthcoming*)
**SILVER MILLER**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone:     (954) 516-6000
DSilver@SilverMillerLaw.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

Civil Action No. _____

INVICTUS HYPERION, a limited liability company
  registered under the laws of the Cayman Islands,

      Plaintiff,

v.

GAMEDEX LIMITED, a company incorporated and
  registered under the laws of the Cayman Islands;
CAMERON GARVIE, an individual; CHRIS PORTER, an individual;
and HENNO FOURIE, an individual;

      Defendants.

_____/

## COMPLAINT FOR DAMAGES

Plaintiff INVICTUS HYPERION, a limited liability company registered under the laws of the Cayman Islands (hereafter referred to as "Plaintiff"), by and through undersigned counsel, hereby sues Defendants GAMEDEX LIMITED, a company incorporated and registered under the laws of the Cayman Islands ("GAMEDEX"); and the following individual defendants (together, the "Management Team"): CAMERON GARVIE, an individual; CHRIS PORTER, an individual; and HENNO FOURIE, an individual; for damages. As grounds therefor, Plaintiff alleges the following:

## PRELIMINARY STATEMENT

1.      Commencing in or about early- to mid-2018, GAMEDEX offered and sold to numerous investors the future right to digital tokens called "GDX" tokens (hereinafter "GDX Tokens") as a means of raising capital in its start-up business.

2.      Defendants first organized a private, "pre-sale" of GDX Tokens, which was to be followed by a December 2018 public sale – an initial coin offering (ICO)[1] – of GDX Tokens.

3.      Through its pre-ICO efforts, Defendants raised approximately Eight Hundred Thousand Dollars ($800,000.00), while also artificially inflating the value of GDX Tokens that Defendants retained for their own profit.

4.      Plaintiff was one of the investors who purchased GDX Tokens from Defendants, having invested Seven Hundred Sixty-Two Thousand Dollars ($762,000.00) in Defendants' venture.

5.      Plaintiff is by far the largest investor in Defendants' efforts.

6.      Defendants' offer and sale of GDX Tokens was rife with misleading and misrepresentative material statements, omissions of material information, involved breaches of binding agreements, failed to include proper disclosures, and was not registered with the SEC.

7.      To date, Defendants have failed to conduct their required ICO/public sale of GDX Tokens; have failed to produce any viable product, good, or service; and by their own admission, are unable to actively run their business.

8.      Defendants pocketed large sums of money for their promotional efforts, and – due to their many misrepresentations, factual omissions, and unlawful action – Plaintiff will not see any return on its investment.

---

[1]      An initial coin offering is an online crowdfunding method.  Individuals and companies use a blockchain (and distributed ledger technology) to create, offer, and sell cryptocurrency or "tokens" – cryptographically-secured digital assets (*e.g.*, bitcoin) that serve as a medium of exchange akin to fiat currency or otherwise serve as a digital representation of some other traditional asset class, such as stocks or commodities for venture fundraising purposes.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

9.      In sum, Defendants, as insiders, enriched themselves at the expense of their investors.

10.     As a result of Defendants' pattern of wrongful conduct, Plaintiff seeks damages in the principal sum of Seven Hundred Sixty-Two Thousand Dollars ($762,000.00), plus attorneys' fees and costs, along with any other relief that this Court deems equitable and appropriate.

## THE PARTIES

### PLAINTIFF

11.     Plaintiff Invictus Hyperion ("Plaintiff") is a limited liability company registered to do business in the Cayman Islands.

### DEFENDANTS

12.     Defendant GAMEDEX LIMITED ("GAMEDEX") is a company incorporated and registered under the laws of the Cayman Islands.  GAMEDEX claimed to have created an online platform for digital collectible cards and the online games in which they can be used.  GAMEDEX promoted its GDX Tokens through a variety of promotional media in this District and throughout the United States.

13.     Defendant CAMERON GARVIE ("GARVIE") is a natural person domiciled in Rockville, Maryland and is *sui juris*.  Defendant GARVIE is a control person of GAMEDEX; he founded GAMEDEX, serves as the company's Chief Executive Officer and Chief Technology Officer, and is a member of GAMEDEX's Management Team.

14.     Defendant CHRIS PORTER ("PORTER") is a natural person domiciled in the United Kingdom and is *sui juris*.  Defendant PORTER is a control person of GAMEDEX, serves as the company's Chief Operating Officer, and is a member of GAMEDEX's Management Team.

15.     Defendant HENNO FOURIE ("FOURIE") is a natural person domiciled in Cape Town, South Africa and is *sui juris*.  Defendant FOURIE is a control person of GAMEDEX, serves as the company's Chief Marketing Officer, and is a member of GAMEDEX's Management Team.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, because the matter in controversy arises under the laws of the United States.

17.     This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

18.     This Court has personal jurisdiction over Defendants because: (a) at least one Defendant is operating, present, and/or doing business within this District, and (b) Defendants' breaches and unlawful activity occurred within this District.

19.     Venue is proper pursuant to 28 U.S.C. § 1391 in that at least one defendant is subject to this court's personal jurisdiction.  In light of the foregoing, this District is a proper venue in which to adjudicate this dispute.

## GENERAL FACTUAL ALLEGATIONS

### GAMEDEX AND THE GDX TOKEN

20.     GAMEDEX purports to give collectible card enthusiasts a unique foothold in the $370 Billion+ collectibles industry by creating a new kind of non-fungible, impossible-to-counterfeit digital collectible card and a platform on which to use it.

21.     According to GAMEDEX's marketing materials: "*Gamedex will be your digital wallet, exchange, and game store all in one, and will run on both desktops and smartphones.*"

22.     To access the functionality of the GAMEDEX network, an interested person has to purchase GAMEDEX's own self-created, native token: the GDX Token, which GAMEDEX describes thusly:

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

> The Gamedex token (ticker: GDX) is a utility token. The GDX token follows the ERC-223* standard (an improved version of ERC-20) and runs on the Ethereum blockchain. Its utility is derived from its numerous uses:
>
> - GDX is used to buy, sell, and trade digital collectibles on the Gamedex platform.
> - GDX is used to buy pay-to-play games on the Gamedex platform.
> - GDX tokens can be used in some games.
> - GDX token holders gain governance rights, including voting on which projects should receive grants and whether milestone payments should be released.
> - GDX token holders pay lower fees on the Gamedex exchange, to the extent that they hold GDX.

23.     For the GAMEDEX platform to gain momentum and reach its intended market, Defendants themselves, and through their agents, promoted the offering and sale of GDX Tokens.

24.     The following are examples of promotional tactics utilized by Defendants.

### DEFENDANTS' PROMOTIONAL TACTICS

25.     At all times material, Plaintiff exercised due diligence before purchasing, acquiring, holding, and refraining from selling its interest in GDX Tokens.  Plaintiff's due diligence, in part, included an extensive review of Defendants' financial records, marketing materials, and statements and representations of material fact at conferences, on panels, online, in videos, publications, and other outlets.

26.     Plaintiff detrimentally relied on these misstatements, misrepresentations, and omissions of material fact, including the following examples, when it decided to purchase, acquire, hold, and not sell its interest in GDX Tokens.

**A.  Bold Representations and Declarations**.

27.     To increase interest in its would-be network, GAMEDEX made bold promotional representations suggesting that the digital collectibles native to its network could be extremely profitable for those holding them and looking to sell:



28.     Additionally, in a self-produced video framed as an "interview" with the founders of

GAMEDEX[2]



Gamedex Founders Interview

the Management Team Defendants published several statements about why GAMEDEX was created,

what utility GDX Tokens can provide token holders, and how profitable owning GDX Tokens could

be, including the following:

> PORTER: I wanted to play digital collectible card games, but in a world where the money
> that I spent on buying the cards was actually **an investment**, not just an expense.

> \*                    \*                    \*

---

[2] https://www.youtube.com/watch?v=Pf7KjUFt5ZE&feature=youtu.be.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

> PORTER: *The scarcity of cards is what* **ensures the value** *of cards on the secondary market.*
>
> \*          \*          \*
>
> GARVIE: *I think non-cryptocurrency digital collectibles could well be* **a hundred billion dollar industry within four years or so, maybe by 2020***.*
>
> \*          \*          \*
>
> PORTER: *Right now, people want to own the things that they buy in-game; and* **this is the technology that enables that***.*

(emphasis added).

### B. Communicating with Potential/Actual Investors on Telegram, Reddit, and Other Messaging Channels.

29.     Defendants encouraged and solicited investment in GDX Tokens with potential and actual investors through various social media and messaging channels, such as Telegram, Reddit, and other media.

30.     Defendants made public representations about information relating to the GDX Tokens, such as, for example, the accuracy of the information in GAMEDEX's Whitepaper.

31.     The Management Team Defendants, among others, served as "admins" of the GAMEDEX Telegram channel (on which they purported to have over 10,000 followers), where they regularly promoted information about GAMEDEX, GDX Tokens, the planned ICO, purchasing information, bonus referrals, bounty programs, and other promotional materials:

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Gamedex
7 February 2018
Cam converted a basic group to this supergroup «gamedex»
8 February 2018
Cam invited Spam Info Bot
Cam invited Group Butler

H

09:16
Henno
https://t.me/officialgamedexannouncements
Henno pinned this message

C

05:00
Cam
!! IMPORTANT: READ THIS FIRST !!

Welcome to the Gamedex Family! 👪
🎮 Digital collectibles powered by Blockchain! 🕹
Do these 3 things before you do anything else:

1 —> Please subscribe to our mailing list on our website at https://www.gamedex.co/ to be first in line for whitelisting, airdrops, prizes and all the latest information about our platform. 📩

2 —> Subscribe to our announcements channel to stay up to date!: https://t.me/officialgamedexannouncements

3 —> 📣 Complete tasks in our airdrop and earn GDX! ⏱
gamedex.co/airdrop We are giving away $1,000,000 of GDX

📲😀👿👽 WELCOME TO OUR FAMILY! 👺😺👾👫👬

Still reading? Why not check out the AMA co-founder Cameron Garvie did with Inflow Crypto! 👆 - https://www.inflow-crypto.club/2018/05/18/gamedex/
Cam pinned this message

C

08:22
Chris | Gamedex Admin
/start@SpamBot
08:22
/help@GroupButler_bot

## C.  Publishing Articles on Popular Websites like Medium and Steemit.

32.    Defendants' promotional efforts included publishing content, like articles, on websites popular among, and targeted to, potential investors.

33.    For example Defendant GARVIE published the following article on Medium, leveraging his experiencing and credentials and hyping the supposed demand for the products GAMEDEX claimed to be developing:[3]

---

[3] https://medium.com/gamedex/what-are-non-fungible-tokens-and-why-you-should-care-cda69a7cbd67.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## What Non-Fungible Tokens Really Are, and Why You Should Care

 Cam [Follow]
Jul 27, 2018 · 5 min read

Blockchain technology is on track to disrupt a handful of industries, especially those that rely on trust and digital ownership. At the moment there
is a lot of innovation happening in the ecosystem, and more recently we have
seen new developments in Ethereum token standards, especially when it comes to non-fungible tokens. Here at Gamedex, we are very excited about the future of non-fungible tokens (NFT) and their use cases in gaming and digital collectables.

\*           \*           \*

### Why You Should Care About Non-Fungible Tokens

Popular mainstream games often have tons of in-game assets that can be purchased, and in fact, it is estimated that the market for in-game items will grow to $32 billion by the year 2020. For most games, these items will be fungible items such as ammunition or spells which can be used in the game. Some games sell so-called 'rare' items today, but without a blockchain, there isn't a way to confirm whether this item is rare or not. With the use of blockchain and non-fungible tokens, we can be sure that items we pay for in games are what they claim to be, and we can trade them on an open market if we want to move to another game or collect other items in the game. Introducing a peer-to-peer economy to gaming and e-sports will bring a new level of interactivity and immersion to the next generation of video games.



Join us at www.gamedex.co, or on Telegram.

Thanks for reading!

34.     Similarly, upon information and belief, Defendants paid writers to publish on websites frequented by people who might be interested in investing in GAMEDEX, such as this article

published on Steemit, articles that were flattering of GAMEDEX's services and touting GAMEDEX as a current-day version of online giants like Amazon and eBay when they were mere start-up entities:[4]



35.     Plaintiff detrimentally relied on Defendants' misstatements, misrepresentations and omissions of material facts when Defendants obtained favorable press, such as online articles about Defendants' team and capabilities when Plaintiff decided to purchase, acquire, hold, and not sell GDX Tokens.

---

[4] https://steemit.com/collectible/@alonshvartsman/new-industry-trend-digital-collectibles.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

**D.  Profit, Compensation, and Value Preservation**.

36.     Most significantly, Defendants explicitly promoted the idea that supporting GAMEDEX by, *inter alia*, purchasing GDX Tokens would translate into "reale [*sic.*] value" and "profit":

16:45
Chris | Gamedex Admin
In reply to this message
Not sure about Ethos (looks to be a crypto wallet?). I understand Ecomi has a product aimed at collecting digital assets.

Gamedex doesn't directly compete with either.

We're building a platform, similar to Steam, but for digital collectible card games. In our case, the digital assets you will own are collectible cards.

Think Magic the gathering, hearthstone or fifa ultimate but with blockchains advantages applied.

This real ownership enabled by blockchain gives digital cards reale value (just like physical cards have now).

The products we are building include an SDK and library, which make it easy to develop and launch games. And an exchange, where card owners can trade their digital cards (build a better deck to compete with, or sell your rare cards for profit).

I hope that makes it more clear, but do ask more questions and I'll do my best to answer.

**THE PRIVATE OFFERING AND SALE OF GDX TOKENS TO PLAINTIFF**

37.     In or about May 2018, Defendants reached out to Plaintiff to solicit Plaintiff's interest in investing in GAMEDEX.

38.     The initial sales pitch was presented by Defendant FOURIE, who made to Plaintiff numerous representations of material fact to induce Plaintiff to invest in GAMEDEX.

39.     In furtherance of inducing Plaintiff's investment, that initial sales pitch was followed-up with Defendants providing Plaintiff numerous written and oral representations promoting Defendants' credentials and capabilities, as well as the viability and profitability of the GAMEDEX project, including the following:

> Defendant GARVIE: "*I've personally managed over a million dollars in software dev [sic.] budgets and have been programming my entire life and I'm confident **this will come in under budget and before deadline and will be rock-solid**.*"
>
> Defendant FOURIE: "*[We] would like to move forward quickly so we can **immediately begin generating a return for Invictus**.*"

**SILVER MILLER**
11780 West Sample Road • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com

40.     As part of Plaintiff's due diligence, Defendants also provided Plaintiff extensive documentation purporting to support the legitimacy of the GAMEDEX project as well as the principals operating the business (*i.e.*, the Management Team Defendants), including copies of financial records and projections, corporate registration documents, marketing plans, the Management Team Defendants' employment contracts and proofs of citizenship, and an extensive questionnaire prepare by Plaintiff to which Defendants responded with laudatory information about the GAMEDEX project and the Management Team Defendants themselves.

41.     On or about June 20, 2018 -- in reasonable reliance on the multiple representations of fact made to Plaintiff by Defendants -- Plaintiff executed with GAMEDEX a Token Purchase Agreement (the "Token Purchase Agreement") memorializing Plaintiff's investment.   A true and correct copy of the Token Purchase Agreement is attached hereto as **Exhibit "A"**.

42.     Incorporated within the Token Purchase Agreement is a separately-enumerated Services and Licensing Agreement (the "Services Agreement") into which Plaintiff and GAMEDEX entered that memorialized GAMEDEX's desire to utilize Plaintiff's services to execute Defendants' plan to conduct an ICO through which GDX Tokens would be sold to the public.

43.     The Token Purchase Agreement and the Services Agreement are collectively referred to herein as "the Agreements."

44.     As set forth in the Agreements, GAMEDEX promised to deploy a smart contract on the Ethereum Blockchain, whereby GAMEDEX would create 4,901,960,000 GDX Tokens, representing the total, finite supply of GDX Tokens.

45.     Limiting the total supply of GDX Tokens further enticed Plaintiff, as its aggregate GDX Token holdings would be more valuable in a finite inventory of GDX Tokens than if GDX Tokens were limitless in number.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

46.     The Token Purchase Agreement further required GAMEDEX to complete an ICO/public sale of GDX Tokens no later than December 31, 2018.

47.     Pursuant to the Agreements, Plaintiff paid to GAMEDEX Seven Hundred Sixty-Two Thousand Dollars ($762,000.00) in exchange for 300,000,000 GDX Tokens to be delivered to Plaintiff in accordance with a predetermined schedule commencing upon the completion of the required ICO.

48.     It was patently clear in the Agreements that Plaintiff was not purchasing an equity stake in GAMEDEX or entering into a partnership with GAMEDEX; rather, Plaintiff was purchasing the right to the 300,000,000 GDX Tokens following GAMEDEX's ICO.

49.     In doing so, Plaintiff relied on Defendants' entrepreneurial and managerial efforts to develop GAMEDEX's core product and services and to increase the demand for those products and services in such a way that would engender an increase in the value of Plaintiff's holdings in GAMEDEX.

### PLAINTIFF PROVIDED GUIDANCE SERVICES TO ASSIST IN EXECUTING THE ICO

50.     As required by the Agreements, Plaintiff timely and adequately provided GAMEDEX certain services to foster Defendants' plan to conduct a public sale of its GDX Tokens.

51.     For example, GAMEDEX publicly published statements concerning Plaintiff's investment and analysis of GDX Tokens:

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com



The Twitter posting published by GAMEDEX included a direct web link to the report Plaintiff had prepared setting forth the fact that Plaintiff had invested over $760,000.00 in GAMEDEX and the reasons why it did so.

52.    GAMEDEX also promoted its own press release touting Plaintiff's investment in the seed round of funding as a way to legitimize Defendants' venture and draw additional interest from investors:



**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

53.     In their self-authored press release, Defendants liken themselves to "*the most talented entrepreneurs and visionaries in the blockchain industry.*"

54.     Moreover, Defendant GARVIE expressed in the press release the great value that Plaintiff would provide to Defendants' efforts "*due to [the Invictus team's] deep expertise and wealth of connections in the industry.*"

55.     Despite the foregoing, Defendants misused and took advantage of Plaintiff's guidance services, goodwill, reputation, and analytical labor.

<u>**PLAINTIFF'S MISPLACED RELIANCE**</u>

56.     At all times material, Defendants enticed Plaintiff to purchase GDX Tokens by making misstatements, misrepresentations, and omissions of material fact, including but not limited to the non-exhaustive examples cited throughout this pleading.

57.     At all times material, Plaintiff conducted due diligence before making its investment; and Plaintiff's due diligence included a review of Defendants' public and private misstatements, misrepresentations, and omissions of material fact, including those published and made on social media, social networks, paid-for press, public and private conferences, and other media.   For example, Plaintiff relied on Defendants' statements concerning:

    a.  The purportedly high value of, and ability to profit from, GDX Tokens;

    b.  The deadline by which GAMEDEX would conclude its ICO;

    c.  Defendants' standing as purportedly credible innovators in blockchain and distributed ledger technology; and

    d.  Defendants representation that they had created a viable product that would make blockchain and distributed ledger technology more accessible for interested users.

58.     Plaintiff's detrimental reliance on Defendants' misstatements, misrepresentations, and omissions of material fact, includes but is not limited to, causing Plaintiff to purchase, acquire, own, hold, and refrain from selling its interests in GDX Tokens.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

**DEFENDANTS BREACHED THEIR OBLIGATIONS AND DISSIPATED CORPORATE ASSETS**

59.     Notwithstanding the foregoing, GAMEDEX did not complete or even commence an ICO by the contractually-required deadline.

60.     Moreover, Defendants have failed to produce any viable good or service, and they have squandered and misappropriated Plaintiff's investment.

61.     As a results of Defendants' actions and inactions, the value of the GDX Token -- as well as Plaintiff's investment in GAMEDEX -- is essentially worthless.

62.     In accordance with its rights under the Token Purchase Agreement, and in light of, *inter alia*, GAMEDEX's failure to conduct or conclude an ICO on or before December 31, 2018, Plaintiff served upon Defendants a written demand for a return to Plaintiff of the purchase price it paid to GAMEDEX under the Token Purchase Agreement.

63.     Despite Plaintiff's demand, Defendants have failed and refused to return to Plaintiff the purchase price Plaintiff paid to GAMEDEX under the Token Purchase Agreement.

64.     Upon information and belief -- based, in part, on Defendants' failure to produce any evidence of a minimum viable product (MVP) and Defendants' failure to gain any kind of legitimate organic traction with its product -- Defendants have abandoned the GAMEDEX project.

65.     Additionally, despite Defendants GARVIE, PORTER, and FOURIE each having signed covenants to not directly or indirectly be engaged or interested, for a period of at least two (2) years, in any business that competes with GAMEDEX or any part of GAMEDEX's business; one or all of them appear to have violated that covenant by re-directing their efforts to competing business activities.

66.     Moreover, before GAMEDEX's December 31, 2018 deadline to conclude a public sale of GDX Tokens but without having produced an MVP, Defendants GARVIE, PORTER, and

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

FOURIE each transferred to themselves corporate assets belonging to GAMEDEX in an effort to enrich themselves to the detriment of GAMEDEX and its efforts to fulfill its corporate mission.

### GDX TOKENS ARE SECURITIES

67.     Based upon current legal standards, GDX Tokens are "securities" subject to federal and state securities laws and should not be allowed to be traded on U.S. exchanges because they were not properly registered and were not exempted from such registration.

68.     One of the greatest values the owner of a security has is his/her/its ability to trade that security on the open market for an appropriate monetary value.  When robbed of the ability to trade the security, the owner is also robbed of much, if not all, of the value attached to that security.

69.     Under the federal securities laws, Defendants offered and sold securities in the form of GDX Tokens; however, Defendants never filed with the SEC a registration statement for its offer and sale of securities or obtained from the SEC an exemption that would excuse Defendants from registering the GDX Tokens.

70.     By failing to prepare and file a registration statement, Defendants were able to withhold from investors important information regarding the investment opportunity promoted by Defendants, such as information about GAMEDEX's current financial condition (including that the company's expenses far exceeded its revenue), the proposed use of investor proceeds, and detailed disclosure of material trends and the most significant factors that made the offering speculative and risky.

71.     Defendants thus failed to disclose information relevant for investors to evaluate Defendants' promises about the investment potential of GAMEDEX and the GDX Tokens.

72.     By engaging in the conduct set forth in this Complaint without a registration statement being in effect or filed and without obtaining from the SEC any exemption from registration,

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Defendants engaged in the unlawful offer and sale of securities in violation of Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a), 77e(c)].

73.     Unless Defendants are permanently restrained and enjoined, they will continue to engage in the acts, practices, and courses of business set forth in this Complaint and in acts, practices, and courses of business of similar type and object.

74.     Plaintiff has duly performed all of its duties and obligations, and any conditions precedent to Plaintiff bringing this action have occurred, have been performed, or else have been excused or waived.

75.     To enforce its rights, Plaintiff has retained undersigned counsel and is obligated to pay counsel a reasonable fee for its services, for which Defendants are liable as a result of their bad faith and otherwise.

## CLAIMS FOR RELIEF

### Count I
### Violations of Section 5(a) and 5(c) of the Securities Act
### (All Defendants)

Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 75 inclusive, as if they were fully set forth herein.

76.     Federal securities laws require that companies disclose certain information through the registration with the SEC of the offer or sale of securities.  This information allows investors to make informed judgments about whether to purchase a company's securities.

77.     By engaging in the conduct described above, Defendants offered and sold securities without a registration statement in effect and without an exemption from registration.

78.     Commencing in or about early- to mid-2018, Defendants conducted an offering of securities, in the form of an offering of GDX Tokens.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

79.      In connection with this offering, Defendants sold a portion of the GDX Tokens at a discount to investment funds and other wealthy investors and planned to sell another portion of the tokens through a process culminating in a December 2018 token distribution event.

80.      The offering and component sales were required to be registered with the SEC unless an exemption applied.

81.      However, neither the offering nor component sales were registered with the SEC, and no registration exemption applied to the offering or to any of these sales.

82.      Defendants received a total of approximately Eight Hundred Thousand Dollars ($800,000.00) as a result of the GDX Token offering and related sales -- nearly all of which came from Plaintiffs' investment.

83.      Investors who bought GDX Tokens through the offering and component sales made an investment of money in a common enterprise with Defendants and with each other, and reasonably would have been led to expect profits derived from the entrepreneurial and managerial efforts of GAMEDEX and its agents.

84.      In reliance on the representations made to Plaintiff by Defendants, Plaintiff was one of the investors who purchased GDX Tokens.

85.      Defendants did not file a Form D with the SEC with respect to the MET/One Tokens offered and sold; those offers and sales were not exempt from registration under Regulation D, which was promulgated under the Securities Act.

86.      As a result of the conduct described above, Defendants violated Section 5(a) of the Securities Act, which states that unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or to carry or cause to be carried through the mails

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

87.     Also as a result of the conduct described above, Defendants violated Section 5(c) of the Securities Act, which states that it shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security.

88.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered damage in the approximate principal sum of $760,000.00.

## Count II
## Breach of Contract
### (Defendant Gamedex)

Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 75 inclusive, as if they were fully set forth herein.

89.     Plaintiff and Defendant GAMEDEX entered into the Agreements.

90.     Plaintiff performed all of its obligations under the Agreements.

91.     Defendant GAMEDEX breached the Agreements when Defendants, *inter alia*, accepted and retained Plaintiff's transfer of value, and then GAMEDEX failed to perform any of its obligations under the Agreements, such as but not limited to, producing a viable, decentralized application that made utilizing blockchain technology easy and accessible for people interested in buying, selling, and trading digital collectibles on the GAMEDEX platform, among other material breaches.

92.     Additionally, Defendant GAMEDEX has breached the Agreements by refusing to honor Plaintiff's written demand for a return to Plaintiff of the purchase price it paid to GAMEDEX under the Token Purchase Agreement.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

93.     As a result, Plaintiff has suffered damage in the approximate principal sum of $760,000.00.

### Count III
### Fraudulent Misrepresentation
### (All Defendants)

Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 75 inclusive, as if they were fully set forth herein.

94.     Defendants made false representations of material facts regarding their products, goods and services, their involvement in the production and development of GAMEDEX, the entity actually conducting the ICO and receiving funds therefrom, among other fraudulent misrepresentations.

95.     Defendants knew the statements were false when making such statements, and knew that they had no intent to perform their obligations under the Agreements.

96.     Defendants intended for Plaintiff to rely on the false statements.

97.     Plaintiff justifiably relied on the false statements when Plaintiff performed all of his obligations under the Agreements.

98.     Plaintiff suffered damages in the approximate principal sum of $760,000.00 due to its reliance on Defendants' false statements and Defendants' refusal to satisfy any of their agreed obligations.

### Count IV
### Negligent Misrepresentation
### (All Defendants)

Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 75 inclusive, as if they were fully set forth herein.

99.     Defendants consistently provided false information for the purpose of manipulating Plaintiff's performance of its obligations under the Agreements.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

100.     Defendants falsely represented that Defendants would reward Plaintiff with a return on its investment in exchange for Plaintiff's investment and efforts at furthering the Defendants' blockchain project.

101.     Defendants failed to exercise reasonable care or competence when they relayed inaccurate information to Plaintiff regarding Defendants' blockchain project and required -but-never- executed ICO.

102.     Plaintiff was injured in the approximate principal sum of $760,000.00 as a result of its justifiable reliance on Defendants' negligent misrepresentations.

## Count V
## Fraudulent Concealment
## (All Defendants)

Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 75 inclusive, as if they were fully set forth herein.

103.     Defendants had a duty to disclose to Plaintiff material information when they made partial disclosures that conveyed a false impression regarding the required-but-never-executed ICO and receive funds therefrom.

104.     Defendants had a duty to disclose to Plaintiff material information after publicly representing that they secured Eight Hundred Thousand Dollars ($800,000.00) in funding upon conclusion of the initial seed round -- nearly all of which came from Plaintiff's investment.

105.     Defendants intentionally concealed material information that was otherwise unknown to Plaintiff and intended to deceive Plaintiff by concealing such information.

106.     Plaintiff acted in justifiable reliance on the Defendants' concealment when it performed its obligations under the Agreements.

107.     Plaintiff suffered damages in the approximate principal sum of $760,000.00 as a result of its justifiable reliance on Defendants' concealment.

SILVER MILLER
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

**Count VI**
**Unjust Enrichment**
**(All Defendants)**

Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 75 inclusive, as if they were fully set forth herein.

108.    Plaintiff conferred a benefit upon Defendants when it provided investment, relations, goodwill, analytical labor, and guidance services to Defendants in connection with the Agreements.

109.    Defendants knowingly received this benefit.

110.    Defendants retained these benefits – and continue to enjoy the fruits of this labor at Plaintiff's expense.

111.    For example Defendants GARVIE, PORTER, and FOURIE each transferred to themselves corporate assets belonging to GAMEDEX -- consisting in large part of Plaintiff's investment funds -- in an effort to enrich themselves to the detriment of GAMEDEX and its efforts to fulfill its corporate mission.

112.    Essentially, Defendants took Plaintiff's money and services, paid themselves, and then provided Plaintiff nothing of value in return.

113.    Plaintiff has suffered damage in the approximate principal sum of $760,000.00, for which Defendants are liable.

**Count VII**
**Breach of Implied Duty of Good Faith and Fair Dealing**
**(Defendant Gamedex)**

Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 75 inclusive, as if they were fully set forth herein.

114.    The covenant of good faith and fair dealing requires that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

115.     Defendants invited Plaintiff to serve as an investor and contributor for their blockchain project in exchange for investment.

116.     GAMEDEX, by and through the Management Team Defendants, used GAMEDEX as a shell company to promote an ICO that never happened and privately raise funds in an attempt to shield Defendants from accountability.

117.     GAMEDEX breached the covenant of good faith and fair dealing when GAMEDEX took Plaintiff's investment funds, promoted its business relationship with Plaintiff, and thereafter refused to generate any return on Plaintiff's investment.

118.     Moreover, GAMEDEX has breached the Agreements by refusing to honor Plaintiff's written demand -- after GAMEDEX had failed to conduct or conclude the ICO by the December 31, 2018 deadline -- for a return to Plaintiff of the purchase price it paid to GAMEDEX under the Token Purchase Agreement.

119.     Defendants were well aware of Plaintiff's reasonable expectation of generating a return on its investment.

120.     Plaintiff was injured in the approximate principal sum of $760,000.00 as a result of Defendants' breach of the covenant of good faith and fair dealing.

### Count VIII
### Alter Ego Liability
### (Management Team Defendants)

Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 75 inclusive, as if they were fully set forth herein.

121.     Upon information and belief, at all times material hereto, the Management Team Defendants were the principals, agents, managers, alter-egos, officers, directors, advisors, or employees of GAMEDEX.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

122.    At all times material, Management Team Defendants acted within the scope of their agency, affiliation, management, alter-ego relationship and/or employment of Defendants GAMEDEX.

123.    At all times material, Management Team Defendants actively participated in or subsequently ratified and adopted, or both, all of the acts or conduct taken by Defendants GAMEDEX, with full knowledge of all of the facts and circumstances, including, but not limited to, full knowledge of each and every violation of Plaintiff's rights and the damages to Plaintiff proximately caused thereby.

124.    Upon information and belief, there exists, and at all times material hereto existed, a unity of interest and ownership by Management Team Defendants with respect to GAMEDEX, such that any individuality and/or separateness between them has ceased to exist.

125.    Upon information and belief, GAMEDEX was a mere shell, instrumentality, and conduit through which Management Team Defendants carried on their business for their sole benefit. GAMEDEX was and is controlled, dominated, and operated by Management Team Defendants as their individual businesses and alter ego.

126.    Upon information and belief, Defendants have intermingled their assets and obtained assets from other Defendants to suit their convenience and to evade liability to Plaintiff, if not other additional obligations.

127.    Upon information and belief, the Management Team Defendants have used their own assets, and those of other Defendants, for personal use and obtained funds from other Defendants' business accounts for their own personal use.

128.    Under the facts and circumstances present herein, adhering to the fiction of separate entities would sanction a fraud and/or promote injustice, because Plaintiff, as a victim of Defendants' wrongdoing, would suffer injury.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

129.     In light of the foregoing, Plaintiff is entitled to a judgment against the Management Team Defendants jointly and severally, in a sum according to proof at trial, plus interest at the maximum rate allowed by law and reimbursement of costs.

130.     As a result thereof, Plaintiff has suffered damage in the approximate principal sum of $760,000.00, for which the Management Team Defendants are liable.

**Count IX**
**Civil Conspiracy**
**(All Defendants)**

Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1 through 75 inclusive, as if they were fully set forth herein.

131.     Since in or around May 2018, Defendants agreed and combined to engage in a conspiracy in the following manner:

a.   Defendants GARVIE, PORTER, and FOURIE heavily promoted the offering and sale of an unregistered, non-exempt security;

b.   Defendants GARVIE, PORTER, and FOURIE published videos, generated favorable press, and made false statements and misrepresentations to induce Plaintiff (and others) to purchase GDX Tokens; and

c.   Defendants GARVIE, PORTER, and FOURIE, among others, administered online chatrooms, including Telegram, where they solicited and encouraged the purchase of GDX Tokens.

132.     Moreover, Defendants GARVIE, PORTER, and FOURIE each transferred to themselves corporate assets belonging to GAMEDEX in an effort to enrich themselves to the detriment of GAMEDEX and its efforts to fulfill its corporate mission.

133.     For example, following GAMEDEX's receipt of the funding provided by Plaintiff -- and before GAMEDEX's December 31, 2018 deadline to conclude a public sale of GDX Tokens but without having produced an MVP -- Defendants GARVIE, PORTER, and FOURIE **doubled** their salaries and transferred to themselves approximately $120,000.00 of GAMEDEX's assets, including

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

cryptocurrency assets that Defendants GARVIE, PORTER, and FOURIE liquidated into fiat currency and then placed into their own personal bank accounts.

134.    Defendants agreed and combined to engage in a civil conspiracy to commit the unlawful acts as described herein.

135.    Defendants combined to engage in a civil conspiracy of which the principal element was to inflict on Plaintiff and the public at large wrongs and injury as described in this Complaint.

136.    Defendants combined to engage in a civil conspiracy that was furthered by overt acts.

137.    Defendants understood, accepted, or explicitly or implicitly agreed to the general objectives of their scheme to inflict on Plaintiff the wrongs and injuries described in this Complaint.

138.    Defendants acquired, possessed, and maintained a general knowledge of the conspiracy's objectives to inflict wrongs against and injury on Plaintiff as described in this Complaint.

139.    Defendants combined to engage in a scheme that was intended to violate the law, and Defendants concealed and secreted such violations.

140.    Defendants combined to engage in a scheme intended to violate Plaintiff's rights.

141.    The Management Team, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts had the power and influence and exercised the same to cause the unlawful offer and sale of GDX Tokens as described herein.

142.    The Management Team, separately or together, possess, directly or indirectly, the directed or cause the direction of the management and policies of GAMEDEX, through the ownership of voting securities, by contract, subscription agreement, or otherwise.

143.    The Management Team, separately or together, separately or together, jointly participated in, and/or aided and abetted, GAMEDEX's misconduct.

144.    Plaintiff has suffered damage in the approximate principal sum of $760,000.00 as a result of Defendants' conspiracy.

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff INVICTUS HYPERION, a limited liability company registered under the laws of the Cayman Islands, respectfully requests that this Court enter a final judgment on all of Plaintiff's claims awarding damages in favor of Plaintiff and against Defendants in an amount to be determined at trial, but in no event less than $75,000.00, plus interest, attorneys' fees, and costs.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.

## RESERVATION OF RIGHTS

Plaintiff reserves its right to further amend this Complaint, upon completion of its investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

Respectfully submitted,

**ROSENBERG, FAYNE & RADEN**

By:  _/s/ Eric F. Rosenberg_
    Eric F. Rosenberg, Esq.
    5400 Kenilworth Avenue
    Riverdale, Maryland 20737
    Telephone: (301) 864-2900
    ERosenberg@Rosenberg-Fayne.com

- and -

David C. Silver, Esq. (*pro hac vice forthcoming*)
DSilver@SilverMillerLaw.com
**SILVER MILLER**
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone: (954) 516-6000

*Counsel for Plaintiff, Invictus Hyperion*

Dated:   August 28, 2019

**SILVER MILLER**
11780 West Sample Road · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com